[Cite as *State v. Jones*, 2012-Ohio-5334.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### VAN WERT COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 15-11-16

    v.

SHAWN M. JONES,                   O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Van Wert County Common Pleas Court
Trial Court No. 10-10-154

**Judgment Affirmed**

Date of Decision:   November 19, 2012

APPEARANCES:

    *Kelly J. Rauch* for Appellant

    *Charles F. Kennedy, III and Eva J. Yarger* for Appellee

**WILLAMOWSKI, J**.

{¶1} Plaintiff-Appellant, Shawn M. Jones ("Appellant"), appeals the judgment of the Van Wert County Court of Common Pleas finding him guilty of the murder of his grandmother. Appellant contends that the trial court erred when it denied his motion to suppress his videotaped statement; when it admitted improper hearsay testimony; and, he also claims he was denied the right to effective assistance of counsel. For the reasons set forth below, the judgment is affirmed.

{¶2} On October 8, 2010, Appellant was indicted by the Van Wert county Grand Jury on one count of murder in violation of R.C. 2903.02. The charges stem from the murder of Appellant's 84-year old grandmother, Edna LaRue ("the victim" or "grandmother"), on October 1, 2010.

{¶3} Dale LaRue, the victim's husband, was paying Appellant to stay at the home and take care of Mrs. LaRue while he visited out-of-state relatives. (Tr. 48-49) Mr. LaRue became concerned when he called home several times and no one answered the phone. He contacted Joette Jones ("Ms. Jones"), the victim's daughter and Appellant's mother, and asked her to check on his wife. (Tr. 51)

{¶4} Ms. Jones had to wait until Appellant returned home to gain entrance to the home because all of the doors were double locked and her key would not work. When Ms. Jones and Appellant entered the home, she discovered her

mother's dead and bloody body lying on the floor. The police and EMS were summoned and they began to investigate. As they were preparing to take photos, Appellant approached the police officers holding an alarm clock that had blood on it. He told them that the it was going to have his fingerprints on it because the clock's cord was wrapped around his grandmother's neck and he had to take it off her neck. (Tr. 105)

{¶5} Ms. Jones and Appellant were asked to go to the police station to give their statements, where Appellant was questioned by Detective Jeffrey Blackmore and Sergeant Haggerty. Appellant was also asked to provide a DNA sample, his hands were photographed, and his clothes and shoes were examined for blood spatter evidence. (Tr. 164) Appellant's shoes had blood spatter stains on them and they were collected for evidence. At some point thereafter, the police obtained a search warrant for all of Appellant's clothing. (Tr. 149-150; 165-66)

{¶6} Although Appellant was not told he was under arrest, he was under the constant supervision of a police officer during the entire time he was at the station. The interview began after midnight and it lasted for approximately 56 minutes. (2/28/11 Suppression Hearing Tr. 3) Prior to beginning the interview, Detective Blackmore advised Appellant of his *Miranda* rights and Appellant acknowledged that he understood them. (*Id*. 5-9) He did not ask for an attorney and agreed to speak with the officers. (*Id*.)

{¶7} Appellant originally told the officers that he left his grandmother at home at 5:30 p.m. when he went to a free church supper, stopped at Wal-Mart, and then gave a ride home to a friend he met while at Wal-Mart. He stated that his grandmother had had a bloody nose, and that was the reason he had some blood on his clothing. Appellant claimed that his grandmother was fine when he left the house and that the first time he learned anything was wrong was when returned home and walked inside with his mother.

{¶8} The officers noted inconsistencies in his story and questioned him further. Eventually, Appellant admitted to strangling his grandmother. (Supp. Hrg. 10-11) He had argued with her about his going out, and he admitted to knocking her down, dragging her around with his belt, and then strangling her with the cord from an alarm clock to keep her from calling for help. (*Id.* 11-13) Appellant was arrested and taken into custody.

{¶9} Appellant entered a plea of not guilty by reason of insanity. Appellant's counsel submitted a written plea and requested an evaluation to determine if Appellant was competent to stand trial, and to determine his mental state at the time of the offense. The court ordered that Appellant be examined by Court Diagnostic Center ("CDC") in Toledo. After that report had been filed with the court, Appellant requested that an independent evaluation be done by Jeffrey

Smalldon, Ph.D. The trial court granted funds for the second evaluation. Both the CDC report and Dr. Smalldon's report found Appellant competent to stand trial.

{¶10} Appellant filed a motion to suppress the statements that he made to the Van Wert Police Department and a hearing was held on that motion on February 28, 2011. The trial court determined that Appellant was not in custody at the time of the interrogation, that his confession was voluntary, and that the videotaped statement would be admissible in the upcoming trial. (Supp. Hrg. Tr. 84-85)

{¶11} A three-day bench trial was held commencing October 17, 2011. The State presented the testimony of numerous individuals from the Bureau of Criminal Investigation ("BCI") and introduced various exhibits confirming that the blood found on Appellant's shoes and jeans had a DNA profile that was consistent with that of the victim. (Trial Tr. 421-22). The coroner testified about the autopsy report and her finding that the cause of death was ligature strangulation. (*Id.* 80-81) The coroner further testified that the ligature mark on the victim's neck was consistent with the electrical cord from the alarm clock. (*Id.* 75-76)

{¶12} Other witnesses testifying for the State included Mr. LaRue and several of the first responders and investigators. The State questioned Detective Blackmore about the investigation and the statements made by Appellant on

October 2, 2010. The videotaped confession was introduced through Detective Blackmore.

{¶13} One of Appellant's cellmates from jail also testified that Appellant had told him that he had killed his grandmother. (Tr. 453-469) The cellmate's statements were consistent with Appellant's taped confession.

{¶14} Robert Albright, a friend of Appellant, testified that he had spent part of the day with Appellant on October 1, 2010, and he testified that Appellant had told him that day that he had killed his grandmother. (*Id.* 469-473) Mr. Albright testified that he was with Appellant when he cashed in the change at the Coin-Star machine from a small bank that had been in the grandmother's home. (*Id.* 474; 53-55) At one point, Appellant even brought Mr. Albright back to the house and he saw the grandmother's body lying on the floor with something around her neck. (*Id.* 480-481) He further testified that Appellant discussed disposing of the body. (*Id.* 487) Mr. Albright admitted that he should have called the police, but that he did not because he was scared. (*Id.* 495-496)

{¶15} Mr. Albright also identified a letter that Appellant had written to him while Appellant was in jail. (Tr. 489-90; Ex. 74). Mr. Albright read a part of Appellant's letter to the court:

> I was going to bag granny in a big trash bag with other garbage and haul it out to the dump. All in all this whole episode was a bunch of bullshit and it was stupid on my part, STUPID!

(*Id.*) The letter also contained comments by Appellant, bragging about how he was going to get out of prison and be sent to a mental hospital in Toledo after the mental evaluations found him to be "coo-coo." After that, Appellant wrote that he would probably be released a few months later and would qualify for disability benefits. (Ex. 74)

{¶16} The defense presented the testimony of only one witness, Appellant's mother. Ms. Jones primarily testified about a traffic accident in 1996 that Appellant had been involved in when he was about twenty years old. (Tr. 531) She stated that he suffered from a massive head trauma and he was not the same person when he came home from the hospital as he had been before. After the accident, Appellant's decision making skills were impaired and he would "freak out" if he felt pressured, and would sometimes have memory gaps. (*Id.* 534) Ms. Jones testified that Appellant's condition had been getting worse over the past year and that he had been scheduled for a re-evaluation on October 5, 2010. (*Id.* 535)

{¶17} After hearing all of the evidence and reviewing over one-hundred exhibits, the trial court found Appellant guilty. He was sentenced to an indefinite prison term of fifteen years to life.

{¶18} Appellant now brings this appeal, raising the following three assignments of error.

## First Assignment of Error

**The trial court erred when it denied Appellant's motion to suppress the videotape of his statements.**

## Second Assignment of Error

**The trial court erred when it admitted extensive hearsay testimony.**

## Third Assignment of Error

**Appellant was denied the right to effective assistance of counsel and he was prejudiced as a result.**

{¶19} In the first assignment of error, Appellant argues the trial court should have granted his motion to suppress his video confession because the facts contradict the trial court's finding that he was not actually "in custody" when he was questioned at the police station. He also contends that the statement was not voluntary because he was pressured by the officers into making incriminating statements, and that the court failed to take into account Appellant's "mental capacity" as a result of his brain injury.

{¶20} To dispel the factors of compulsion inherent in the custodial interrogation setting, the United States Supreme Court mandated in *Miranda v. Arizona*, 384 U.S. 436 (1966), that individuals must be apprised of their right to remain silent and their right to the assistance of counsel. The protections established in *Miranda* operate to temper "the inherently compelling pressures [of custodial interrogation] which work to undermine the individual's will to resist and

to compel him to speak where he would not otherwise do so freely." *Miranda* at 467; *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 57. *Miranda* is concerned with only one specific type of coercive environment: that created by custodial interrogation in a police-dominated atmosphere. *Perez* at ¶ 60.

{¶21} For purposes of *Miranda*, a defendant is not subject to custodial interrogation simply because of his presence at a police department, even though the defendant may be considered a suspect. *State v. Greeno*, 3d Dist. No. 13–02–46, 2003-Ohio-3687, ¶ 14, quoting *State v. Biros*, 78 Ohio St.3d 426, 440, 1997-Ohio-204. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *See, e.g.*, *State v. Carter*, 72 Ohio St.3d 545, 552, 1995-Ohio-104. A reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. *State v. Greeno*, at ¶ 10.

{¶22} First, Appellant claims that the trial court erred in its denial of his motion to suppress when it determined that he was not in custody at the time of his interrogation. Giving due deference to the trial court's findings of fact, we find that this determination was supported by credible evidence at the suppression hearing. However, whether or not he was in custody is immaterial in this case, because Appellant *was* informed of his *Miranda* rights before the interview with the officers began. Appellant acknowledged that he understood his rights and at

no time did he request an attorney or indicate that he wished to consult an attorney or that he wished to exercise his right to remain silent. (Hrg. Tr. 7-8)

{¶23} Nevertheless, a confession made after a *Miranda* warning may still be inadmissible if the confession is not made voluntarily, knowingly, and intelligently. *Miranda*, 384 U.S. at 444; *State v. Wilson*, 117 Ohio App.3d 290, 293 (1st. Dist.1996). A trial court, in determining whether a statement was made voluntarily, and whether defendant knowingly and voluntarily waived his *Miranda* rights prior to giving a statement, should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the defendant; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. *State v. Brinkley*, 105 OhioSt.3d 231, 2005 -Ohio- 1507, ¶ 57, quoting State *v. Edwards*, 49 Ohio St.2d 31(1976), paragraph two of the syllabus.

{¶24} Appellant contends that the waiver of his rights under *Miranda* and his confession were not made voluntarily, knowingly, and intelligently because of coercive police conduct and his decreased mental capacity. He argues that he was "pressured" into making incriminating statements because of the officers' statements that his failure to tell the truth would make him look bad in front of a jury.

{¶25} We find that the record supports the trial court's finding that Appellant's confession was voluntary under the totality of the circumstances. (Hrg. Tr. 85) The entire interrogation was videotaped, and the record demonstrates that the officers were polite and accommodating to Appellant in every respect. Pursuant to R.C. 2933.81(B), such an interrogation is presumed to be voluntary if the statements made by the person are electronically recorded. The person making the statements during the electronic recording has the burden of proving that the statements were not voluntary. *Id.*

{¶26} Prior to the questioning, Appellant had the opportunity to use the restroom and to smoke. The questioning took place in a casual manner with everyone sitting around a table, wearing casual clothing. Although the officers did not tell Appellant he was free to leave, he never asked to leave, never asked for a break, and was only questioned for 56 minutes. While the officers urged Appellant to tell the truth, there were never any threats.

> Clearly, a suggestion of leniency by the police is not enough to invalidate a confession, but would merely be a factor bearing on whether the confession was voluntary. *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895. Admonitions to tell the truth made by police officers are considered neither threats nor promises, and are permissible. *Id.*; *State v. Wiles* (1991), 59 Ohio St.3d 71, 571 N.E.2d 97, certiorari denied (1992), 506 U.S. 832, 113 S.Ct. 99, 121 L.Ed.2d 59. Promises that a defendant's cooperation will be considered in disposition of the case, or that a confession will be helpful, do not invalidate an otherwise legal confession. *State v. Loza* (1994), 71 Ohio St.3d 61, 641 N.E.2d 1082, certiorari denied (1995), 514 U.S. 1120, 115 S.Ct. 1983, 131 L.Ed.2d 871.

*State v. Wilson*, *supra*, 177 Ohio App.3d at 294. The officers' requests of Appellant to tell the truth did not constitute excessive coercion. *See id.*

{¶27} The results of the Appellant's two competency evaluations did not indicate that his mental condition was a significant factor in considering the voluntariness of his confession. The video shows that Appellant fully comprehended everything the officers were saying, and he spoke articulately and demonstrated a great capacity for remembering phone numbers, addresses, and other details in response to their questions. Appellant had also been arrested and convicted before, so he had some familiarity with the procedures.

{¶28} Furthermore the expert from the CDC evaluation found that Appellant was "oriented to time, place and person. There was no evidence of attention or concentration deficits serious enough to have interfered with our conversation. There was no evidence of any significant intellectual impairment." (Court's Exhibit #1 to Competency hearing, 1/5/11). Appellant's own expert, Dr. Smalldon, found that Appellant "possesses the functional capacities that are required for a legal finding that he is 'competent to stand trial' under Ohio law." (Court's Exhibit #3 to Competency Hearing, 2/14/11). Without official coercion or an overbearing interrogation, Appellant's mental condition alone does not dispose of a question of voluntariness.

{¶29} Under the totality of the circumstances, Appellant has not met his burden to demonstrate that his confession was not voluntary. We do not find that the trial court abused its discretion when it denied his motion to suppress. The first assignment of error is overruled.

{¶30} Appellant's second assignment of error asserts that the trial court erred when it allowed witnesses to give testimony consisting of inadmissible hearsay. He specifically objects to instances of testimony where Officer Black related what Ms. Jones had told him when he arrived at the scene of the crime and when Detective Blackmore testified as to what Mr. Albright had told him. Appellant contends that the trial court erred when it overruled defense counsel's objection to Officer Black's testimony. And, even though there was no objection to Detective Blackmore's testimony, he contends that its admission amounted to plain error.

{¶31} "'Hearsay'" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Generally, hearsay is not admissible unless one of several exceptions to the hearsay rule is applicable. See Evid.R. 802–807. Also, Evid.R. 801(D) specifies certain statements which are not considered hearsay.

{¶32} Officer Black's statements concerning what Ms. Jones had told him when he arrived at the scene were offered more in the context of his describing

what occurred at the beginning of the investigation, when he first arrived at the scene and was trying to find out what had occurred. While it does not appear as if the statements were being offered for the truth of the matter asserted, we agree with Appellant in that Black's reiteration of the conversations with Ms. Jones went beyond what was necessary to factually describe the procedural history as to what occurred when the victim's body was first encountered by the police.

{¶33} At trial, the State argued that the testimony should be admissible because Ms. Jones had been subpoenaed and was available to be cross-examined. (Tr. 97) Evid.R. 801(D)(1) does provide that a statement is not hearsay "if (1) the declarant testifies at trial or hearing and is subject to cross examination concerning the statement * * *." However, this exception is not applicable here. In addition to the above requirement, *the second part* of this hearsay exclusion rule requires that one of three additional conditions must be met, namely that the statements pertain to prior inconsistent statements, Evid.R. 801(D)(1)(a); that the statements pertain to prior consistent statements; Evid.R. 801(D)(1)(b); or, that the statements pertain to identification, Evid.R. 801(D)(1)(c).[1] These factors were not applicable to the testimony of Ms. Jones in this trial. Furthermore, the circumstances giving

---

[1] The entire text of Evid.R. 801(D) states: "A statement is not hearsay if: (1) Prior statement by witness. The declarant testifies at trial or hearing and is subject to cross-examination concerning the statement, and the statement is (a) inconsistent with declarant's testimony, and was given under oath subject to cross-examination by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) consistent with declarant's testimony and is offered to rebut an express or implied charge against declarant of recent fabrication or improper influence or motive, or (c) one of identification of a person soon after perceiving the person, if the circumstances demonstrate the reliability of the prior identification."

rise to testimony under factors (a) or (b) would ordinarily only be permitted on rebuttal, after the declarant's testimony has come under attack.

**{¶34}** However, the improper admission of evidence is harmless error where the remaining evidence constitutes overwhelming proof of a defendant's guilt, beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 555, 2001-Ohio-112, quoting *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus. In making a Crim.R. 52(A) harmless error analysis, any error will be deemed harmless if it did not affect the accused's "substantial rights." An error is harmless where there is no reasonable probability that the error contributed to the outcome of the trial. *State v. Brown*, 65 Ohio St.3d 483, 485, 1992-Ohio-61.

**{¶35}** Here, Appellant's video-taped confession, the testimony of Mr. Albright, and the forensic evidence, all provided overwhelming evidence of Appellant's guilt beyond a reasonable doubt. Officer Black's hearsay testimony did not necessarily provide any specific evidence of Appellant's guilt, and its omission would not have affected the trial's outcome in any way. Furthermore, because this was a bench trial rather than a trial before a jury, a judge is presumed to consider only the relevant, material and competent evidence in arriving at a judgment unless the contrary affirmatively appears from the record." *State v. Colegrove*, 140 Ohio App.3d 306 (8th Dist.2000), quoting *State v. Eubank*, 60 Ohio St.2d 183, 187 (1979). Based on all of the facts in the record, the admission

of Officer Black's testimony concerning Ms. Jones' statements was harmless error.

**{¶36}** Appellant also objects to Detective Blackmore's testimony when he testified as to what Mr. Albright told him during the investigation. As discussed above, this testimony would have constituted hearsay. However, Appellant's failure to object at trial waives any claim of error on appeal except for plain error. *See* Crim.R. 52(B); *State v. Bahns*, 185 Ohio App.3d 805, 2009–Ohio–5525, 925 N.E.2d 1025, ¶ 19 (2d Dist.). Under that rule, the *defendant* bears the burden of demonstrating that a plain error affected his substantial rights. *State v. Perry*, 101 Ohio St.3d 118, 2004 -Ohio- 297, ¶ 14. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to "prevent a manifest miscarriage of justice." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

**{¶37}** As discussed above, even if all of Detective Blackmore's hearsay testimony was ignored, the outcome of the trial would not have been any different because of the overwhelming evidence of guilt found in Appellant's confession and the forensic evidence. Furthermore, although Detective Blackmore's recitation of what Mr. Albright had told him during the investigation was hearsay, Mr. Albright himself testified to most of the significant points, so all of the information that was offered by Detective Blackmore was in the record through

the witness' direct testimony. The few differences in the testimony between the two were merely minor details. Therefore, not only did Detective Blackmore's hearsay testimony fail to rise to the level of being plain error, it basically constituted harmless error.

**{¶38}** Thus, while the challenged testimony of Officer Black and Detective Blackmore did constitute hearsay, its inclusion in the trial was merely harmless error. The second assignment of error is overruled.

**{¶39}** In his third and final assignment of error, Appellant asserts that he did not receive a fair trial based on the ineffectiveness of his trial counsel. Appellant maintains that his counsel was ineffective (1) when he failed to object to Detective Blackmore's hearsay testimony; (2) when he failed to object to the admission of various exhibits without a proper foundation; (3) when he failed to object to "improper opinion testimony" elicited by the State from Detective Blackmore; and, (4) when he failed to make an argument for the court regarding Appellant's plea of not guilty by reason of insanity.

**{¶40}** To establish ineffective assistance of counsel, a defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that but for counsel's errors, the proceeding's result would have been different. *State v. Group*, 98 Ohio St.3d 248, 2002–Ohio–7247, ¶ 132*;*

*State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus; *Strickland v. Washington*, 466 U.S. 668, 687–688 (1984). "A 'reasonable probability' is a probability sufficient to undermine confidence in the result of the proceeding." *State v. Group*, at ¶ 132. The failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel and may be justified as a tactical decision. *State v. Gumm*, 73 Ohio St.3d 413, 428, 1995–Ohio–24. There is strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and that strategy and tactical decisions exercised by defense counsel are well within the range of professionally reasonable judgment and need not be analyzed by a reviewing court. *State v. Robinson*, 108 Ohio App.3d 428 (3d Dist.1996).

{¶41} First, as discussed above in the second assignment of error, the admission of the hearsay testimony was found to be harmless error. Appellant cannot show that he was prejudiced in any way by the admission of this evidence. Furthermore, since the trial court had already overruled his objections to Officer Black's statement, counsel cannot be faulted for not raising a similar objection to Detective Blackmore's testimony. Based upon the overwhelming evidence of appellant's guilt, we find that even if the trial counsel erred in failing to object to inadmissible hearsay, any such error was harmless. The outcome of appellant's

trial would not have been different had the allegedly hearsay testimony been objected to by trial counsel and deemed inadmissible.

{¶42} Next, Appellant asserts that counsel was ineffective when he failed to object to the admission of various exhibits without a proper foundation, and to accompanying hearsay evidence relative to those exhibits. Specifically, Appellant complains that counsel failed to authenticate multiple documents, such as the printout from the coin-star machine, labeled Exhibit 68; a receipt from a cash register paying out for the change put into the coin-star machine, labeled Exhibit 69; and photos from a Marathon Station in Delphos and an Aaron's Rental security video, that were used to identify the shirt Appellant was wearing when he was arrested and to track his whereabouts on the date of the murder. Also, Appellant submits that counsel erred when he failed to object to Detective Blackmore's testimony concerning several exhibits that were not admitted. And finally, he claims that counsel should have objected to the admission of the letter Appellant wrote to Mr. Albright.

{¶43} It has long been held that trial courts enjoy broad discretion in admitting or rejecting evidence. *State v. Long*, 53 Ohio St.2d 91, 98. Even if trial counsel had objected to more of the exhibits, it cannot be said with any certainty that they would have been excluded. And, oftentimes trial counsel's decision to forego an objection to a matter, especially if not significant, may be a matter of

sound trial strategy and does not constitute ineffective assistance of counsel. *See, e.g.*, *State v. Dixon*, 152 Ohio App.3d 760, 2003 -Ohio- 2550, ¶ 43 (3d Dist.).

**{¶44}** Furthermore, the few exhibits that Appellants complains of constituted just a small fraction of the more than one hundred exhibits that were offered for admission. Moreover, the evidence complained of was minor evidence, and was merely corroborative or cumulative to the main evidence. The majority of the State's case relied upon Appellant's statement, the eyewitness testimony, and the forensic evidence. And again, because this was a bench trial, the presumption is that the trial court considered only the admissible evidence. *See, e.g., State v. Reddy*, 192 Ohio App.3d 108, 2010 -Ohio- 5759, ¶ 58 (8th Dist.).

**{¶45}** Although the letter from Appellant to Mr. Albright was probably more significant than the other exhibits, the record demonstrates that the exhibit was properly identified and authenticated by Mr. Albright. Evid.R. 901(A) states the following: "(A) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The rule continues, explaining that testimony of a witness with knowledge that a matter is what it is claimed to be conforms to the requirement of the rule. Evid.R. 901(B)(1). The proponent must present foundational evidence or testimony from which a rational jury may determine that the evidence is what it is

claimed to be. Mr. Albright identified the letter, the circumstances of its receipt, and explained how he was familiar with Appellant's handwriting and was certain that this was a letter from Appellant. (Tr. 488)

{¶46} Appellant also claims counsel erred when he failed to object to "improper opinion testimony" elicited by the State from Detective Blackmore, where he complains that Detective Blackmore was expressing his belief about the credibility of another witness. The record does not support that assertion. Detective Blackmore gave his opinion that *his belief* was that the victim was already dead at a time when he was questioned about a statement that had been made by one of the neighbors who thought she saw the victim during the afternoon. That neighbor was not even a witness and did not testify (and there was also evidence in the record that this neighbor had memory problems) and the time of death was not a key issue. The detective never gave any direct testimony considering the veracity of this neighbor; he just commented that her recollection did not comport with his belief as to the time of death, based his lengthy investigation and evidence from multiple sources.

{¶47} And finally, Appellant argues that trial counsel failed to present evidence to the Court or make an argument regarding the not guilty by reason of insanity claim. First, Appellant's incorrectly asserts that the CDC report only discussed Appellant's competency to stand trial and did not discuss his mental

state at the time of the offense. The report of Dr. Thomas Sherman of CDC specifically found that "[i]t is my medical opinion with reasonable professional certainty that this defendant, at the time of the offense, *did not suffer from a mental disease or defect which prevented him from knowing the wrongfulness of his acts.*" (Emphasis in original.) (1/5/11 Competency Hearing Tr. p. 2; Ex. 1)

{¶48} To establish the defense of insanity, the defendant must prove by the greater weight of the evidence that at the time of the offense, he did not know, as a result of a severe mental disease or defect, the wrongfulness of his act. R.C. 2901.01(14). Clearly, Dr. Sherman found that Appellant did not meet the test for not guilty by reason of insanity. There is no evidence in the record that counsel could have presented that would have met this standard, so it cannot be said that counsel was ineffective for not pursuing this defense.

{¶49} Appellant has failed to demonstrate that his counsel's representation was ineffective. The third assignment of error is overruled.

{¶50} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and ROGERS, J.J., concur.**

**/jlr**

-22-