[Cite as *State v. Guerra*, 2023-Ohio-2920.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

    CASE NO. 12-23-01

v.

ERIC JORDAN GUERRA,           O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeal from Putnam County Municipal Court
Trial Court No. 2022 CRB 00155**

**Judgment Affirmed**

**Date of Decision:  August 21, 2023**

---

APPEARANCES:

    *Austin C. Buchholz* **for Appellant**

    *Nicole M. Smith* **for Appellee**

Case No. 12-23-01

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Eric J. Guerra ("Guerra") appeals the judgment of the Putnam County Municipal Court, alleging that his conviction is not supported by sufficient evidence; that his conviction is against the manifest weight of the evidence; and that he was denied his right to the effective assistance of counsel. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} After a birthday party on June 18, 2022, A. went to her cousin's house for a sleepover. Her cousin's mother was Erin T. ("Erin"). However, A. ended up going with her cousin over to Guerra's house at roughly 6:00 P.M. for the purpose of babysitting Guerra's children. Guerra and his wife, Taylor Guerra ("Taylor"), went to a community function. When Guerra came home late at night, A. was watching a movie with her cousin. Guerra asked if they wanted to join the adults at a bonfire in the backyard. A. and her cousin declined this invitation, opting instead to finish their movie.

{¶3} After the movie was over, A. fell asleep on the couch in Guerra's living room with a blanket on top of her. A. testified that Guerra woke her up at roughly 3:00 A.M. to tell her that he had taken A.'s cousin home. Guerra then went back outside to tend to the bonfire. Shortly thereafter, Guerra returned to the living room. A. testified that he asked if he could sit on the couch and watch some television. A. then made room for Guerra to sit on the couch.

{¶4} A. testified that, while Guerra was watching the television, he moved closer to where she was lying down on the couch, reached under the blanket, and touched her leg. She affirmed that "his hand began to slide up her leg" and testified that she "felt like something go up [her] * * * leg and grab her right butt cheek." (Tr. 23). She testified that no one else was on the couch beside her and that she pushed Guerra's hand away from her body. (Tr. 44-45). A. stated that Guerra then got up and went to the bathroom.

{¶5} A. indicated that, when he returned from the restroom, he "got behind" her on the couch "like he was giving [her] * * * a bear hug." (Tr. 46). She testified that Guerra then began to slide his hand down her shirt towards her breast. She affirmed that he "touch[ed] the top part of her breast" and that she pushed his hand away a second time. (Tr. 47). Guerra then sat back up on the couch next to her.

{¶6} A. testified that Guerra then tried a third time to touch her, putting his hand on her side. After she pushed his hand away for the third time, Guerra went upstairs and did not attempt to touch her again. A. testified that she then deliberated about what course of action to take. She did not have her cell phone with her to contact anyone about this situation. A. ultimately chose to remain on the couch because another one of her cousins was in the house and she wanted to make sure her cousin was protected.

{¶7} Later in the morning of June 19, 2019, A. noticed that Guerra had a security camera in the living room when she saw Taylor repositioning it. A. testified

that the camera had been turned towards the wall, but after Taylor had adjusted it, the camera was facing the couch where A. had been sleeping in the living room. A. was then picked up from Guerra's house by Erin. On the drive to Erin's house, A. shared that she had "felt very uncomfortable" at Guerra's house and that Guerra had touched her inappropriately. (Tr. 28). However, she did not disclose the remainder of her allegations.

{¶8} A's father, Gabriel T. ("Gabriel"), picked her up at Erin's house and then drove with her to a community event in town. Shortly after they had arrived at the event, Gabriel noticed that A. seemed "really off." (Tr. 56). A. then began to cry and disclosed all of her allegations. Gabriel testified that, in this timeframe, A. was "[h]ysterical, just crying." (Tr. 64).

{¶9} Gabriel then took A. to the police department where she spoke with Officer Scott Harshman ("Officer Harshman"). On June 22, 2022, Officer Harshman contacted Guerra, who denied touching A. inappropriately and suggested that A. had a nightmare while she was sleeping at his house. Guerra initially denied having cameras in his living room but later reported that the cameras had been unplugged. On June 23, 2022, A. sat for an interview at Children's Services Department at Putnam County Job and Family Services with Michelle Schumacher ("Schumacher").

{¶10} On August 8, 2022, Guerra was charged with one count of sexual imposition in violation of R.C. 2907.06(A)(4), a third-degree misdemeanor. A.,

Gabriel, Officer Harshman, Schumacher, and Taylor testified at a bench trial on January 24, 2023.  The Defense called Erin to testify as a witness, but she was not present by that point during the trial.  After considering the evidence, the trial court found Guerra guilty of the charge against him.  On February 16, 2023, the trial court issued its judgment entry of sentencing.

{¶11} Guerra filed his notice of appeal on February 21, 2023.  On appeal, he raises the following four assignments of error:

### First Assignment of Error

**Appellant's conviction was not supported by sufficient evidence presented at trial.**

### Second Assignment of Error

**Appellant's conviction was against the manifest weight of the evidence presented at trial.**

### Third Assignment of Error

**Appellant did not receive effective assistance of counsel when Counsel failed [to] request a recess in order to locate Appellant's witness when Appellant's witness was unable to be found.**

### Fourth Assignment of Error

**The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(A) on the Sexual Imposition charge and thereafter entering a judgment of conviction on this offense [that] was not supported by sufficient evidence.**

*First Assignment of Error*

**{¶12}** Guerra argues that his conviction for sexual imposition is not supported by sufficient evidence.

Legal Standard

**{¶13}** "A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial." *State v. Gear*, 3d Dist. Van Wert No. 15-22-03, 2023-Ohio-1246, ¶ 13, quoting *In re Swift*, 8th Dist. Cuyahoga No. 79610, 2002-Ohio-1276, ¶ 19. This analysis "addresses the question of whether adequate evidence was produced for the case to be considered by the trier of fact and, thus, whether the evidence was 'legally sufficient to support the verdict * * *.'" *State v. Barga*, 3d Dist. Shelby No. 17-17-14, 2018-Ohio-2804, ¶ 8, quoting *State v. Worthington*, 3d Dist. Hardin No. 6-15-04, 2016-Ohio-530, ¶ 12.

**{¶14}** "An appellate court is not to examine whether the evidence presented should be believed but should rather 'examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Wilson*, 2022-Ohio-504, 185 N.E.3d 176, ¶ 57 (3d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259, 274, 574 N.E.2d 492 (1991), *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668 (1997). On appeal, the applicable standard of review "is whether, after viewing the evidence in

the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 27, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 62 (3d Dist.).

{¶15} To establish a conviction for sexual imposition in violation of R.C. 2907.06(A)(4), the State must establish that the defendant

> ha[d] sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person.

R.C. 2907.06(A)(4). The Ohio Revised Code defines "sexual contact" as follows:

> any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.

R.C. 2907.01(B). The State need not produce direct testimony to establish the contact was for the purpose of sexual arousal or gratification. *State v Lewis*, 3d Dist. Van Wert No. 2-98-1, 2020-Ohio-6894, ¶ 25. "The requisite purpose 'may be discerned from the type, nature, and circumstances of the contact * * *.'" *Id.*, quoting *State v. Uhler*, 80 Ohio App.3d 113, 123, 608 N.E.2d 1091 (9th Dist. 1992).

{¶16} Further, R.C. 2907.06(B) states that a person may not be convicted of sexual imposition "solely upon the victim's testimony unsupported by other

evidence." Thus, the State must produce some corroborative evidence. *State v. Lieurance*, 3d Dist. Auglaize Nos. 2-12-21 and 2-12-23, 2013-Ohio-3875, ¶ 27.

Legal Analysis

{¶17} Under this assignment of error, Guerra raises two main arguments. First, he asserts that the State did not establish that he was eighteen years old and more than four years older than A. at the time of this offense. At trial, A. gave her date of birth and testified that she was fourteen. Taylor then testified that she had been married to Guerra for five years. This would indicate that he is over the age of eighteen. Further, for Guerra to have been married for five years, he would also have to be more than five years older than A. The trial testimony also indicates that Guerra was able to drive; had four children; and had been drinking alcohol. A. also describes Guerra as being one of the "adults." (Tr. 16). Gabriel testified that he and Guerra "grew up together." (Tr. 65). Based on this evidence, we conclude that the State produced some evidence to substantiate the age-related elements of the offense of sexual imposition. Thus, Guerra's first argument is without merit.

{¶18} Second, Guerra argues that the State did not produce evidence that the alleged contact was motivated by the purpose of sexual arousal or gratification. However, during her trial testimony, A. indicated that Guerra sat down next to her; put his hand under the blanket covering her; reached up her leg; and grabbed the right area of her buttocks. A. stated that she pushed his hand away from her body. She then testified that Guerra left the couch to go to the bathroom but later returned

to where she was on the couch. A. indicated that Guerra laid alongside her, giving her a "bear hug." (Tr. 46). She stated that he then reached under the blanket; down her shirt; and touched the upper region of her breast. A. stated that she again pushed his hand away from her body and that he moved away from her.

{¶19} A.'s trial testimony indicates that, to touch her buttocks and the upper portion of her breast, Guerra had to sit down next to her on the couch; reach under a blanket; get underneath her clothes; and move his hand across portions of her body. After he touched her buttocks, he left the living room before returning to the couch and reaching down her shirt to touch the upper area of her breast. This testimony suggests that he was intentionally seeking to make contact with these erogenous zones of A.'s body. A. also affirmed that, in touching these areas, he "slid" his hand across her leg and down her shirt. (Tr. 45, 47). She also testified that he positioned himself around her body when he reached down her shirt to make contact with her breast, affirming that he gave her a "bear hug." (Tr. 46).

{¶20} Further, A. testified that, after Guerra first touched an erogenous zone of her body, she pushed his hand away to signal that this contact was unwanted. However, he put his hands on her two more times before he went to bed, prompting A. to push his hands away from her body on both occasions. Based on the circumstances surrounding the contact that Guerra made with these erogenous zones of A.'s body, a rational trier of fact could infer that he acted with the purpose of attaining sexual arousal or gratification. *See State v. Jones*, 3d Dist. Auglaize No.

2-98-1, 1998 WL 405906, *3 (July 22, 1998); *State v. Adams*, 5th Dist. Licking No. 02-CA-00043, 2002-Ohio-5953, ¶ 23. Thus, Guerra's second argument is without merit.

**{¶21}** Having examined the evidence in a light most favorable to the prosecution, we conclude some evidence was produced at trial from which the trial court could determine that Guerra was over eighteen years old and more than four years older than A. Further, we also conclude that some evidence was produced at trial from which the trial court could determine that Guerra had acted with the purpose of seeking sexual arousal or gratification. For these reasons, Guerra has failed to demonstrate that his conviction is not supported by legally sufficient evidence. Thus, his first assignment of error is overruled.

*Second Assignment of Error*

**{¶22}** Guerra argues that his conviction for sexual imposition is against the manifest weight of the evidence.

Legal Standard

**{¶23}** "In a manifest weight analysis, 'an appellate court determines whether the state has appropriately carried its burden of persuasion.'" *State v. Richey*, 2021-Ohio-1461, 170 N.E.3d 933, ¶ 29 (3d Dist.), quoting *State v. Blanton*, 121 Ohio App.3d 162, 169, 699 N.E.2d 136 (3d Dist. 1997). "Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence

supports the verdict." *Plott, supra*, at ¶ 73. Thus, "the appellate court sits as a 'thirteenth juror' * * *." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 (1997). On appeal, courts

> must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'

*State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387.

{¶24} "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

Legal Analysis

{¶25} We herein reincorporate our review of the evidence presented in the sufficiency analysis and proceed to examine the evidence presented by the Defense.

At trial, Officer Harshman stated that he heard two inconsistencies between A.'s disclosure to him at the police station and her trial testimony. First, A. had told him previously that she told Guerra "no" when he was touching her. In her trial testimony, she indicated that she did not give him verbal commands but just pushed his hand away. On redirect examination, A. indicated that she pushed Guerra's hand away as a way of letting him know she did not want him to touch her. Second, Officer Harshman said, "My understanding when she told me that he went up under her shirt * * * versus her stating [at trial that] Eric [Guerra] went down." (Tr. 91). He indicated that her statements were otherwise consistent. Schumacher was questioned about this second inconsistency and affirmed that she did not see any "substantive difference" between "saying that he went up the shirt, under the shirt, or in the shirt * * *." (Tr. 112).

{¶26} On cross-examination, A. testified that, when she mentioned Guerra touching her inappropriately, Erin said nothing in response. A. explained that she did not disclose all of the allegations to Erin because she did not trust her. On cross-examination, Gabriel testified that Erin did not mention A. had told her that Guerra had inappropriately touched her. He testified that A. was not acting abnormally during the drive to the community event but that he noticed her behavior seemed off while they were at the event.

{¶27} The Defense called Taylor as a witness. She testified that A. was over at their house for a birthday party; that A. babysat their children while they were at

-12-

a community event; and that A. spent the night at their house. Taylor stated that they left their house at roughly 10:00 P.M. and returned close to midnight. She stated that she and Guerra were outside at a bonfire for a couple hours and then went to a relative's house before coming home and going to bed at roughly 4:00 A.M.

{¶28} Taylor further testified that Guerra did not have any contact with A. while she (Taylor) was awake. Taylor stated that she tried to wake up A. when Guerra was going to take A.'s cousin home but was not able to get her up. She testified that she went to bed at roughly the same time as Guerra and that she believed she would have woken up if he had gotten up from bed to go downstairs. After she went to bed, she got up one time to feed her baby. At that time, Guerra was in their bed. However, she admitted that this feeding lasted a brief period of time. Taylor also testified that she and Guerra had been drinking that night. She admitted that Guerra was mildly intoxicated and that he drove A.'s cousin to Erin's house in this condition.

{¶29} Having examined the testimony presented at trial on the basis of its weight and credibility, we cannot conclude that the evidence weighs heavily against Guerra's conviction. The record contains no indication that the finder of fact lost its way and returned a verdict that is against the manifest weight of the evidence. Accordingly, Guerra's second assignment of error is overruled.

*Third Assignment of Error*

**{¶30}** Guerra argues that he was denied his right to the effective assistance of counsel when defense counsel did not request a recess to locate a witness.

Legal Standard

**{¶31}** "Under Ohio law, 'a properly licensed attorney is presumed to carry out his duties in a competent manner.'" *State v. Harvey*, 3d Dist. Marion No. 9-19-34, 2020-Ohio-329, ¶ 57, quoting *State v. Gee*, 3d Dist. Putnam No. 12-92-9, 1993 WL 270995 (July 22, 1993). "For this reason, the appellant has the burden of proving that he or she was denied the right to the effective assistance of counsel." *State v. Cartlidge*, 3d Dist. Seneca No. 13-19-44, 2020-Ohio-3615, ¶ 39. "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *State v. McWay*, 3d Dist. Allen No. 1-17-42, 2018-Ohio-3618, ¶ 24, quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶32}** In order to establish deficient performance, the appellant must demonstrate that trial "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 23, quoting *Strickland* at 687. "[D]ebatable trial tactics do not establish ineffective assistance of counsel." *State v. Queen*, 3d Dist. Logan No. 8-19-41, 2020-Ohio-618, ¶ 14,

quoting *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101.

**{¶33}** "In order to establish prejudice, 'the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.'" *State v. Berry*, 3d Dist. Union No. 14-20-05, 2021-Ohio-1132, ¶ 122, quoting *State v. Bibbs*, 2016-Ohio-8396, 78 N.E.3d 343, ¶ 13 (3d Dist.). If the appellant does not establish one of these two prongs, the appellate court does not need to consider the facts of the case under the other prong of the test. *State v. Baker*, 3d Dist. Allen No. 1-17-61, 2018-Ohio-3431, ¶ 19.

Legal Analysis

**{¶34}** On appeal, Guerra argues that, when the trial court was notified that Erin was not present to testify as a witness, defense counsel should have requested a recess and sought to locate Erin. Even if we assume that Erin could have been located had a recess been requested and granted, Guerra has not demonstrated how Erin's testimony would have changed the outcome of this proceeding. At trial, Gabriel, Officer Harshman, and Schumacher testified about the content of A.'s disclosures on June 19, 2022 and June 23, 2022. The content of these disclosures and A.'s trial testimony were repeatedly compared and scrutinized through direct and cross-examination. Schumacher testified that the content of the forensic interview and the content of A.'s disclosure to the police were consistent.

{¶35} However, on direct examination, Officer Harshman identified the two inconsistencies that he observed between A.'s initial disclosure to him and her trial testimony. The Defense then recalled Officer Harshman as a witness to testify about these two inconsistencies at the conclusion of the trial. After hearing all of the trial testimony, the trial court concluded that A.'s testimony "was extremely credible." (Tr. 145). There is no indication that Erin's testimony would have changed this conclusion or the outcome of this case. Since Guerra has failed to establish that defense counsel's failure to request a recess prejudiced his defense, he has failed to carry the burden of establishing that he was denied his right to the effective assistance of counsel. Thus, his third assignment of error is overruled.

*Fourth Assignment of Error*

{¶36} Guerra argues that the trial court erred in denying his Crim.R. 29 motion for acquittal.

Legal Standard

{¶37} Crim.R. 29 provides for motions for judgments of acquittal and reads, in its relevant part, as follows:

> The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

Crim.R. 29(A). "An appellate court reviews a denial of a Crim.R. 29 motion for judgment of acquittal using the same standard that is used to review a sufficiency of

the evidence claim. *Sullivan, supra*, at ¶ 27, quoting *State v. Lightner*, 3d Dist. Hardin No. 6-08-11, 2009-Ohio-544, ¶ 11.

**{¶38}** R.C. 2907.06(B) states that "[n]o person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence." The Ohio Supreme Court has given the following interpretation of corroboration requirement in R.C. 2907.06(B):

> The corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Slight circumstances or evidence which tends to support the victim's testimony is satisfactory. The corroboration requirement of R.C. 2907.06(B) is a threshold inquiry of legal sufficiency * * * not a question of proof * * * [for] the factfinder.

*State v. Economo*, 76 Ohio St.3d 56, 60, 1996-Ohio-426, 666 N.E.2d 225 (1996). *See State v. Haskell*, 3d Dist. Wyandot No. 16-15-03, 2015-Ohio-3095, ¶ 40.

Legal Analysis

**{¶39}** After the State rested, defense counsel made a Crim.R. 29 motion for acquittal, arguing that the State provided "nothing to corroborate" A.'s allegations. (Tr. 113). However, Gabriel testified that he picked up A. from Erin's house on June 19, 2022. They then went to a community event where Gabriel noticed that A. "was really off" and was acting "out of character." (Tr. 56, 63). Based on her "demeanor," he asked if anything was wrong. (Tr. 60). In response, A. "just started crying." (Tr. 61). He also testified that this was not normal behavior for A. to cry in front of others. Gabriel then took her to a more private location where she

disclosed her allegations. He stated that, in this process, A. was "[h]ysterical, just crying." (Tr. 64).

**{¶40}** Officer Harshman also testified that he contacted Guerra about A.'s allegations. He reported that Guerra indicated that A. was at his house; that "he heard [her] * * * crying"; that "he went to investigate"; and that A. indicated that she had a nightmare. (Tr. 83). While Guerra denied having any physical contact with A., he did confirm that A. was sleeping at his house on that evening. Guerra also eventually admitted that he had security cameras in his living room as A. had reported.

**{¶41}** Further, Schumacher testified that she spoke with Taylor and Guerra. She indicated that Taylor stated that she had been with Guerra at a community event until 1:00 A.M. or 2:00 A.M. on the night when A. was at their house. Taylor told Schumacher that Guerra then left the house to drive two kids home and that she, not Guerra, attempted to wake up A. that night. This testimony confirms that A. spent the night at Guerra's house. Taylor also indicated that they had cameras in their house but stated that the footage is not retained after each day.

**{¶42}** After hearing the State's arguments, the trial court denied Guerra's Crim.R. 29 motion, finding that corroborating evidence had been presented by the State in this case. Having examined the evidence in the record in a light most favorable to the prosecution, we cannot conclude that the trial court erred in finding that the State had presented corroborative evidence that was sufficient to support a

-18-

conviction for the offense of sexual imposition. *See Lieurance, supra*, at ¶ 28-29; *Economo, supra*, at 228-229. Thus, the trial court did not err in denying Guerra's Crim.R. 29 motion. Accordingly, the fourth assignment of error is overruled.

*Conclusion*

**{¶43}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Putnam County Municipal Court is affirmed.

***Judgment Affirmed***

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**