[Cite as *State v. McCleery*, 2024-Ohio-5760.]

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,

  v.

MICHAEL R. MCCLEERY,

     DEFENDANT-APPELLANT.

CASE NO. 8-24-22

O P I N I O N

Appeal from Logan County Common Pleas Court
Trial Court No. CR 22 10 0244

**Judgment Affirmed**

Date of Decision:  December 9, 2024

APPEARANCES:

   *Alison Boggs* **for Appellant**

   *Nathan Yohey* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Michael R. McCleery ("McCleery") appeals the judgment of the Logan County Court of Common Pleas, arguing that the jury reached a verdict against the manifest weight of the evidence; that his conviction is not supported by sufficient evidence; and that the trial court erred by denying his motion in limine. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} O.H. is McCleery's daughter and lives with her mother, J.H., in Indiana. Around the time that O.H. turned five, she began to have weekend visits at her father's house in West Mansfield, Ohio. On these visits, O.H. would sleep with McCleery in his bed because she "was a kid" and "was scared of people breaking in * * *." (Tr. 170). O.H. testified that, while she was lying on her side next to him in bed, McCleery "would rub [her] * * * vagina over [her] * * * clothes." (Tr. 173). She further indicated that this conduct would occur "almost every night" that she visited his house. (Tr. 175).

{¶3} When O.H. was in fifth grade, she indicated to her mother that she no longer wanted to go to McCleery's house. However, she did not give J.H. any reasons for not wanting to continue these weekend visits. O.H. later testified that she did not tell her mother about the sexual abuse because she "was scared." (Tr.

178). Around this time, J.H. noticed that O.H. was isolating herself from her family and seemed distant. As a result, J.H. began bringing O.H. to a licensed therapist, Noelle Clouse ("Clouse"), for counseling.

{¶4} When O.H. was in sixth grade, her class watched a video about "bullying and abuse" at school. (Tr. 179). O.H. testified that, after watching this video, "everything just kind of came flooding back" and she began "crying." (Tr. 179). She then went to her school guidance counselor and disclosed the allegations of sexual abuse. The school resource officer then contacted J.H. In response, J.H. sought treatment for O.H. by taking her to Clouse's office on June 7, 2022. During this session, Clouse documented what O.H. disclosed as part of the records kept by her practice.

{¶5} On August 22, 2022, Detective Mike Brugler ("Detective Brugler") of the Logan County Sheriff's Office sat down for an interview with McCleery. Initially, McCleery denied inappropriately touching his daughter and denied the allegations made by O.H. However, he went on to state that he did not "intentionally" touch her but admitted he may have possibly touched her inappropriately when he was "[d]ead asleep." (Tr. 248). He then stated, "being asleep, I could have. I don't know." (Tr. 250).

{¶6} After reviewing O.H.'s allegations, Detective Brugler said, "so I can say she's not lying." (Tr. 254). In response, McCleery said, "Right." (Tr. 254). When asked how many times this occurred, McCleery stated, "Maybe twice, three

times, maybe." (Tr. 255). He then indicated that they would "cuddle" in bed; that O.H. would then place his hand on her; that O.H. "kept moving" his hand; and that this process would last five to ten minutes. (Tr. 258). McCleery then said, "I screwed up." (Tr. 263).

{¶7} When asked whether each instance was O.H.'s fault, McCleery stated, "Probably not. Honestly, probably * * * just trying to be nice dad." (Tr. 269-270). "It probably got to be habit point because it was normal, and it just started." (Tr. 271). He clarified that this was not "maliciously done" and denied that any penetration occurred. (Tr. 270). The interview concluded after McCleery said, "I'm not going to say she's a hundred percent lying. I'm not saying I'm a hundred percent being truthful either. I don't know." (Tr. 272-273).

{¶8} On August 28, 2022, McCleery spoke on the phone with his ex-wife, Rebecca McCleery ("Rebecca"). During this conversation, Rebecca's son was in the room and could hear what was being said since the phone was on speaker. McCleery spoke about the allegations raised against him by O.H. Rebecca testified that, in this conversation, McCleery said, "I'm going to be in trouble" because "it turns out it's true." (Tr. 203).

{¶9} On October 11, 2022, McCleery was indicted on two counts of rape in violation of R.C. 2907.02(A)(1)(b), first-degree felonies, and two counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), third-degree felonies. On March 8, 2024, McCleery made a motion in limine, seeking a preliminary ruling

that would exclude testimony from Clouse. After a hearing on this motion, the trial court overruled the motion in limine.

{¶10} On March 11, 2024, a jury trial commenced on the two charges of gross sexual imposition while the two counts of rape were dismissed on motion of the State. The trial court permitted Clouse to testify as a witness for the State over defense counsel's objection. On March 12, 2024, the jury found McCleery guilty of both counts of gross sexual imposition. On April 16, 2024, the trial court issued its judgment entry of sentencing.

{¶11} McCleery filed his notice of appeal on May 16, 2024. On appeal, he raises the following three assignments of error:

**First Assignment of Error**

**The jury's verdict is against the manifest weight of the evidence.**

**Second Assignment of Error**

**The trial court erred when it overruled appellant's Criminal Rule 29 motions.**

**Third Assignment of Error**

**The trial court erred when it overruled appellant's motion in limine, allowing cumulative hearsay evidence that was prejudicial to appellant.**

We will consider the second assignment of error before the first and third assignments of error.

*Second Assignment of Error*

**{¶12}** McCleery argues that his convictions for gross sexual imposition are not supported by sufficient evidence.

Legal Standard

**{¶13}** A sufficiency-of-the-evidence analysis examines whether the State has carried its burden of production at trial. *State v. Richey*, 2021-Ohio-1461, ¶ 16 (3d Dist.). "On review, an appellate court is not to consider whether the evidence at trial should be believed but whether the evidence, if believed, could provide a legal basis for the finder of fact to conclude that the defendant is guilty of the crime charged." *State v. Daniels*, 2024-Ohio-1536, ¶ 13 (3d Dist.).

> Accordingly, the applicable standard 'is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.'

*State v. Reed*, 2024-Ohio-4838, ¶ 30 (3d Dist.), quoting *State v. Plott*, 2017-Ohio-38, ¶ 62 (3d Dist.).

**{¶14}** In order to prove that the defendant committed the offense of gross sexual imposition in violation of R.C. 2907.05(A)(4), the State must establish that the defendant (1) "ha[d] sexual contact with another; cause[d] another to have sexual contact with the offender; or cause[d] two or more other persons to have sexual contact" and (2) "[t]he other person, or one of the other persons, is less than

thirteen years of age, whether or not the offender knows the age of that person." R.C. 2907.05(A)(4).

{¶15} In turn, R.C. 2907.01 defines "sexual contact" as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B). Thus, "[t]hrough the definition of sexual contact in R.C. 2907.01(B), gross sexual imposition as described in R.C. 2907.05(A)(4) requires proof of touching 'for the purpose of sexually arousing or gratifying either person.'" (Emphasis sic.) *State v. Dunlap*, 2011-Ohio-4111, ¶ 25, quoting R.C. 2907.01(B).

{¶16} "The State need not produce direct testimony to establish the contact was for the purpose of sexual arousal or gratification." *State v. Guerra*, 2023-Ohio-2920, ¶ 15 (3d Dist.). The requisite purpose "may be discerned from the type, nature, and circumstances of the contact * * *." *State v. Lewis*, 2020-Ohio-6894, ¶ 25 (3d Dist.), quoting *State v. Uhler*, 80 Ohio App.3d 113, 123 (9th Dist. 1992).

Legal Analysis

{¶17} On appeal, McCleery argues that the State did not produce any evidence from which the jurors could conclude that he intentionally acted for the purpose of attaining sexual gratification. To support this argument, he points out that, early in his police interview, he stated that he was "[d]ead asleep" when O.H.

was in bed with him and that he was not entirely aware of what may have transpired with O.H. (Tr. 248).

{¶18} However, McCleery later told the police that this conduct got to a point of being a "habit * * * because it was normal." (Tr. 271). McCleery also admitted that he "screwed up" and explained that he was "just trying to be [a] nice dad" rather than acting "maliciously." (Tr. 263, 270). The police also told McCleery that O.H. reported that he was "rubbing her in bed at least one time" during each visit she made to his house. (Tr. 254). In response, McCleery stated that this only occurred two or three times.

{¶19} On appeal, McCleery also points out that, on cross-examination, O.H. was asked whether her dad was awake while he was rubbing her vagina, and she replied, "I don't know." (Tr. 191). On redirect, she clarified that she did not "think he was asleep." (Tr. 192). She also testified that, during one incident, she remembers him saying, "I know you're not awake." (Tr. 192). She identified this statement at trial as an indication that McCleery was not asleep.

{¶20} We also note that O.H. testified that McCleery would "rub [her] * * * vagina over [her] * * * clothes" and that this occurred "almost every night" that she visited his house. (Tr. 173, 175). *See Guerra*, 2023-Ohio-2920, ¶ 20 (A jury can infer whether a person was acting for sexual gratification based upon the nature of the contact.). She also testified that she would "try to move away" and that this contact would stop if she got out of the bed. (Tr. 174). Thus, even if O.H. could

not confirm whether her father was fully awake each time this conduct occurred, her testimony indicated that this conduct occurred repeatedly over an extended period of time. (Tr. 191).

{¶21} Finally, we also note that Rebecca testified that McCleery indicated to her that the allegations of molestation were "true." (Tr. 203). She further indicated that the actions McCleery described went beyond his hand slipping down towards O.H.'s private area and went beyond snuggling. Rebecca stated that McCleery told her that he "starting moving it [his hand] around and then it became a habit." (Tr. 210). She described it as "a massage situation" where McCleery was moving his hand around O.H.'s "private area." (Tr. 210).

{¶22} Having reviewed the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could conclude from McCleery's statements in the police interview that he acted intentionally. He described this behavior as a "habit"; admitted he "screwed up"; and described his motivation as being "nice" rather than "malicious[]." (Tr. 263, 270, 271). Thus, the trial court did not err in denying McCleery's Crim.R. 29 motion. Accordingly, the second assignment of error is overruled.

*First Assignment of Error*

{¶23} McCleery argues that his convictions for gross sexual imposition are against the manifest weight of the evidence.

Legal Standard

**{¶24}** "A manifest-weight analysis examines whether the State has carried its burden of persuasion at trial." *State v. Carroll*, 2024-Ohio-1626, ¶ 58 (3d Dist.). On review, "an appellate court's function * * * is to determine whether the greater amount of credible evidence supports the verdict." *State v. Harvey*, 2020-Ohio-329, ¶ 12 (3d Dist.), quoting *Plott*, 2017-Ohio-38, ¶ 73.

> Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"

*State v. Randle*, 2018-Ohio-207, ¶ 36 (3d Dist.), quoting *Plott* at ¶ 73, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶25}** In this analysis, "the credibility of witnesses is primarily a determination for the trier of fact." *State v. Morris*, 2022-Ohio-3608, ¶ 41 (3d Dist.), quoting *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.). For this reason, an appellate court must "allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 2014-Ohio-5320, ¶ 7 (3d Dist.). "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Hunter*, 2011-Ohio-6524, ¶ 119, quoting *Thompkins* at 387.

Legal Analysis

**{¶26}** McCleery argues that the testimony introduced at trial contained inconsistencies that render his convictions against the manifest weight of the evidence. He points to the fact that O.H. stated that she was not sure if he was awake and later testified that she believed he was awake. McCleery also notes that O.H. testified that she would sleep on the edge of the bed with her back towards him but then stated she would move away from him while he was touching her.

**{¶27}** However, we note that O.H. was describing a pattern of behavior that occurred repeatedly over a number of years. McCleery went so far as to describe this conduct as a "habit." (Tr. 271). A reasonable trier of fact could conclude that these alleged inconsistencies were simply variations that occurred between the many different instances of the conduct that O.H. described in her testimony. We also note that some of these incidents occurred when she was a young child. *See State v. Smith*, 2016-Ohio-3418, ¶ 54 (7th Dist.). Even if the statements identified on appeal did represent inconsistencies, O.H.'s "core allegations" were consistent across the evidence contained in the record. *Id.*

**{¶28}** Against these alleged inconsistencies, we also note that Rebecca testified that McCleery indicated to her that allegations against him were "true" and that he was "going to be in trouble." (Tr. 203). Further, the description of events that McCleery gave to Rebecca was consistent with the substance of what O.H. alleged and what McCleery told the police. As noted previously, McCleery

admitted during the police interview that he "screwed up"; stated that this conduct became a "habit" and "normal"; explained that he was not acting "maliciously"; and indicated O.H. was not lying. (Tr. 263, 269-270, 271). He then stated that this happened "[m]aybe twice, three times, maybe." (Tr. 255).

{¶29} In summary, even if O.H.'s testimony contained inconsistencies, the "trier of fact "may take note of the inconsistencies and resolve or discount them accordingly, [but] such inconsistencies do not render [a] defendant's conviction against the manifest weight or sufficiency of the evidence." (Brackets sic.) *State v. Canankamp*, 2023-Ohio-43, ¶ 42 (3d Dist.), quoting *State v. Craig*, 2000 WL 297252, *3 (10th Dist. Mar. 23, 2000). Having examined the evidence in the record, we find no indication that the jury lost its way and returned a verdict that was against the manifest weight of the evidence. Accordingly, the first assignment of error is overruled.

*Third Assignment of Error*

{¶30} McCleery argues that the trial court erred by denying his motion in limine and permitting Clouse to testify over his objection at trial. He also argues that the trial court should have excluded a portion of J.H.'s testimony.

Standard of Review

{¶31} The decision to admit or exclude evidence is committed to the sound discretion of the trial court. *State v. Little*, 2016-Ohio-8398, ¶ 8 (3d Dist.). For this reason, an appellate court reviews a trial court's determination on the admission of

evidence under an abuse of discretion standard. *Sullivan*, 2017-Ohio-8937, ¶ 20. Thus, an appellate court is not to substitute its judgment for that of the trial court but will reverse the trial court's decision if it is unreasonable, arbitrary, or capricious. *State v. Howton*, 2017-Ohio-4349, ¶ 23 (3d Dist.).

Legal Standard

**{¶32}** "A motion in limine 'serves the useful purpose of raising and pointing out before trial, certain evidentiary rulings that the Court may be called upon to make.'" *Harvey*, 2020-Ohio-329, ¶ 49, quoting *State v. Maurer*, 15 Ohio St.3d 239, 259 (1984). "A ruling on a motion in limine reflects the court's anticipated treatment of an evidentiary issue at trial and, as such, is a tentative, interlocutory, precautionary ruling." *State v. French*, 72 Ohio St.3d 446, 450 (1995). "In deciding such motions, the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial." *City of Defiance v. Kretz*, 60 Ohio St.3d 1, 4 (1991).

**{¶33}** "Finality does not attach to the court's ruling until the trial court makes its final determination as to the admissibility of the evidence at trial." *Kinn v. HCR ManorCare*, 2013-Ohio-4086, ¶ 44 (6th Dist.), citing *State v. Grubb*, 28 Ohio St.3d 199, 202 (1986). Thus, a decision on a motion in limine does not preserve an issue raised therein for appeal. *Grubb* at 203. If an issue raised a motion in limine is preserved by objection or proffer at trial, "[a]n appellate court will * * * review the correctness of the trial court's ruling on the objection rather than the ruling on the

motion in limine." *State v. Benedict*, 2022-Ohio-3600, ¶ 37 (3d Dist.), quoting *State v. Wild*, 2010-Ohio-4751, ¶ 37 (2d Dist.).

**{¶34}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "The rules of evidence define a 'statement' as '(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion.'" *State v. Bruce*, 2023-Ohio-3298, ¶ 82 (3d Dist.), quoting Evid.R. 801(A). "Hearsay is typically inadmissible unless the statement falls into a hearsay exception." *State v. Berry*, 2021-Ohio-1132, ¶ 100 (3d Dist.).

Legal Analysis

**{¶35}** McCleery raises two main arguments. First, McCleery argues that the trial court erred by permitting Clouse testify about the statements that O.H. made to her during the course of receiving treatment on June 7, 2022. Evid.R. 803(4) reads, in its relevant part, as follows:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> (4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Evid.R. 803(4). "This exception applies even to statements made to psychological caregivers, therapists and social workers." *State v. Grimm*, 2019-Ohio-2961, ¶ 12 (12th Dist.).

{¶36} In this analysis, "[t]he salient inquiry is whether the child's statements were made for purposes of diagnosis and treatment rather than for some other purpose." *State v. Gutierrez*, 2011-Ohio-3126, ¶ 52 (3d Dist.), citing *State v. Muttart*, 2007-Ohio-5267, ¶ 56. "The trial court should consider factors such as the child's age, the child's motive to fabricate, the consistency of the child's declarations, and whether the child appreciated the need to be truthful to medical personnel." *State v. Tebelman*, 2010-Ohio-481, ¶ 37 (3d Dist.), citing *Muttart* at ¶ 49.

{¶37} In this case, Clouse testified at trial that she was a licensed mental health counselor and therapist who had provided treatment to O.H. for several mental health issues that she had been experiencing. On June 7, 2022, O.H. was taken to Clouse for treatment and disclosed the allegations of sexual abuse. The record indicates that Clouse and O.H. had an ongoing therapist-patient relationship that began when O.H. was eleven and continued through the time of trial. *See Gutierrez* at ¶ 53.

{¶38} Clouse indicated that the information that she gathered at the June 7 session was part of forming a diagnosis and an "appropriate treatment" plan. (Tr. 154). She also provided testimony about how this information shaped the course of

O.H.'s therapy from that point forward and was necessary to address several symptoms that O.H. had been exhibiting. *State v. Geboy*, 145 Ohio App.3d 706, 721 (3d Dist. 2001). Clouse also testified that O.H. appeared to understand the nature of what she was alleging at the time of this disclosure.

**{¶39}** On cross-examination, Clouse confirmed that she was not "an investigator," receiving O.H.'s statements while providing her therapy. (Tr. 159). J.H. also indicated that this therapy session occurred before she communicated with law enforcement and before she had been contacted by Children's Services about the allegations. *See Gutierrez* at ¶ 53. On direct and cross-examination, O.H. was questioned about whether she had any motivation to fabricate these allegations. Given this testimony, we find no indication in the record that the trial court abused its discretion by admitting these challenged statements pursuant to Evid.R. 803(4).[1]

**{¶40}** Further, O.H. testified at trial and was subject to cross-examination. This Court has previously held that, "[w]here a declarant is examined on the same matters as contained in an impermissible hearsay statement and where the testimony is essentially cumulative, the admission of any such hearsay statement is harmless." *Gutierrez*, 2011-Ohio-3126, ¶ 50. Thus, even if the trial court erred by permitting

---

[1] If the appellant intends to challenge the admission of the written statement into evidence as an exhibit, we also note that "medical records are admissible under the exception to the hearsay rule for records of regularly conducted activity set forth in Evid.R. 803(6)." *State v. Campbell*, 2024-Ohio-1693, ¶ 62 (8th Dist.). At trial, Clouse testified that she documented what O.H. disclosed consistently with the procedures of her practice and retained this statement with the records kept for O.H. *See State v. Burson*, 2024-Ohio-1834, ¶ 54 (12th Dist.).

Clouse's testimony, any such error would be harmless under the facts of this case. For these reasons, we conclude that this first argument is without merit.

**{¶41}** Second, McCleery argues that J.H. should not have been permitted to testify that O.H. indicated that she no longer wanted to have weekend visits with her father. After the trial court overruled an objection to this testimony, J.H. stated that O.H. never gave a reason for not wanting to continue these visits. In his brief, McCleery admits that J.H. "did not testify to actual statements made" by O.H. (Appellant's Brief, 7). However, he argues that this testimony still contains hearsay because it relayed "nonverbal conduct" that was "intended * * * as an assertion." *Id.*, quoting Evid.R. 801(A)(2).

**{¶42}** As an initial matter, we note that J.H. did not describe any conduct undertaken by O.H. that could be interpreted as an assertion. *See State v. Piercefield*, 2023-Ohio-1781, ¶ 20 (12th Dist.). Further, even if this testimony were considered to be relaying a nonverbal assertion, J.H. was providing an explanation as to why she stopped facilitating weekend visits for O.H. at McCleery's house after engaging this practice for five years. "[T]estimony which explains the actions of a witness to whom a statement was directed, such as to explain the witness' activities, is not hearsay." *State v. Berry*, 2021-Ohio-1132, ¶ 104 (3d Dist.), quoting *State v. Maurer*, 15 Ohio St.3d 239, 262-263 (1984). *See also State v. Palmer*, 2022-Ohio-2643, (7th Dist.) (finding that testimony from a mother of a victim of sexual abuse

was "presented more for [establishing] background or a timeline" rather than for the truth of the matters asserted")

{¶43} Further, at trial, O.H. testified that the weekend visits at her father's house ended when she was around ten years old because "she didn't want to see him." (Tr. 176). She stated that she stopped visiting him after they had an argument on another matter but that the reason that she had for not wanting to return to his house was ultimately the sexual abuse. Thus, the person who made this purported nonverbal assertion, O.H., testified about this exact topic at trial and was subject to cross-examination. For this reason, even if the trial court should have excluded the challenged statement from J.H., any resulting error was harmless. *Gutierrez*, 2011-Ohio-3126, ¶ 50. We conclude that this second argument is without merit. Since McCleery's arguments do not establish that the trial court abused its discretion as alleged, the third assignment of error is overruled.

*Conclusion*

{¶44} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Logan County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**